FILED
JUN 13 2018
U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

IN THE MATTER OF AN APPLICATION )
OF THE UNITED STATES OF AMERICA )
FOR A WARRANT TO OBTAIN )
RECORDS, LOCATION INFORMATION, )
INCLUDING PRECISION LOCATION ) No. 4:18MJ07169 SPM
INFORMATION, CELL SITE )
INFORMATION, AND OTHER ) **FILED UNDER SEAL**
SIGNALING INFORMATION )
ASSOCIATED WITH THE CELLULAR )
TELEPHONE HAVING THE NUMBERS )
(314) 552-1091. )

## AFFIDAVIT

Michael Carnucci, being duly sworn, deposes and says that he is a Special Agent with the Drug Enforcement Administration (DEA), duly appointed according to law and acting as such.

### Introduction

I am a Special Agent with the Drug Enforcement Administration (DEA), duly appointed according to law and acting as such. I have been employed as a Special Agent since 2016 for the DEA. For the past eighteen months, I have gained experience and undergone training in the investigation of narcotics trafficking organizations. During the course of my law enforcement experience, specifically DEA, which specializes in narcotics investigations, I have participated in several complex domestic investigations involving drug trafficking organizations dealing in cocaine, methamphetamine, heroin, marijuana, and other controlled substances. Based on my training, experience, and participation in controlled substance investigations, your affiant is familiar with the methods of operation of drug traffickers. I am familiar with and have used normal methods of investigation, including, but not limited to, visual surveillance, questioning of

witnesses, the use of search and arrest warrants, the use of informants, the utilization of undercover agents and the use of court-authorized wire intercepts. I am also familiar with federal criminal laws, particularly those laws relating to narcotics. I am part of an experienced team of narcotics investigators that have participated in numerous drug trafficking investigations utilizing various investigative techniques.

The facts alleged in this affidavit come from my own investigation, my training and experience, and information obtained from other investigators and witnesses. As this affidavit is submitted for the limited purpose of establishing probable cause to locate and monitor the location of a cellular telephone as part of a criminal investigation, it does not set forth all of the my knowledge regarding this matter.

Upon information and belief, and as explained in greater detail below, the cellular telephone bearing number **(314) 552-1091** (hereinafter the "**subject cellular telephone**"), which is being serviced by SPRINT (hereinafter referred to as "the Service Provider"), has been used, and is presently being used with the "WhatsApp" application,[1] in connection with the commission of offenses involving ongoing violations of Title 21, United States Code, Sections 846 and 841(a)(1) (hereinafter referred to as "the subject offenses"), by Fernando VASQUEZ-VARGAS (a/k/a "Rambo"), Daniel TORRES-RAMIREZ, and others known and unknown.

---

[1] Investigators determined VASQUEZ-VARGAS is utilizing the WhatsApp application associated with the **subject cellular telephone.** VASQUEZ-VARGAS only utilizes the iPhone/Android WhatsApp application to communicate with the confidential source, explained in greater detail below. WhatsApp requires the user to have an underlying contact number, and the WhatsApp can be installed on any phone/tablet with internet connectivity and can simultaneously be installed on multiple devices to communicate with encrypt messages and voice calls. Many users believe this technology adds an extra layer of insulation to their communications from law enforcement detection.

2

The present affidavit is being submitted in connection with an application of the Government for a warrant and order authorizing agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, to obtain location information, including precision location information, cell site location information, and other signaling information, including pen register information, in an effort to locate and monitor the location of the **subject cellular telephone**.

Your affiant further states that there is probable cause to believe that the location information associated with the **subject cellular telephone** will lead to evidence of the aforementioned subject offenses as well as to the identification of individuals who are engaged in the commission of those criminal offense and related crimes.

### Investigation and Probable Cause

During the month of May 2017, investigators from DEA-St. Louis began an investigation into the Daniel TORRES-RAMIREZ Drug-Trafficking Organization (TORRES-RAMIREZ DTO). DEA investigators began working with a Confidential Source (CS)[2] who had information about the TORRES-RAMIREZ DTO. Specifically, CS advised agents that TORRES-RAMIREZ, a/k/a "Chilango," and Rafael BARRADAS are distributing multi-kilogram amounts of cocaine, heroin, and methamphetamine throughout the St. Louis, Missouri, metropolitan area.

During the month of June 2018, Investigators received information that Fernando VASQUEZ-VARGAS a/k/a "RAMBO" was currently distributing ounce quantities of cocaine in

---

[2] CS is currently working for monetary compensation. CS's information has been shown to be reliable in this investigation through physical surveillance, controlled purchases of narcotics, and electronic communications recorded/and or observed by investigators. Other investigations have corroborated facts provided by CS.

the St. Louis metropolitan area on behalf of TORRES-RAMIREZ. TORRES-RAMIREZ has been in Mexico since December 2017 and is having issues reentering the United States.

On June 9, 2018, CS sent an outgoing text message utilizing the "WhatsApp" Messenger[3] application to VASQUEZ-VARGAS whose "WhatsApp" account is associated with cellular telephone **(314) 552-1091** (the **subject cellular telephone**).[4]  A review of CS's cellular telephone revealed that the **subject cellular telephone** was in the name of "RAMBO," the identifier of VASQUEZ-VARGAS' "WhatsApp" account. (See Figure 1 below.)



---

[3] WhatsApp Messenger is a free instant messaging service for smartphones. It uses the Internet to make voice calls, one to one video calls; send text messages, images, videos, documents, user location, audio files, phone contacts and voice notes using standard cellular mobile numbers. According to https://www.whatsapp.com/, all data are end-to-end encrypted. The "WhatsApp" website says, "When end-to-end encrypted, your messages and calls are secured so only you and the person you're communicating with can read or listen to them, and nobody in between, not even WhatsApp."

[4] All communications between the CS and VASQUEZ-VARGAS referenced in this affidavit are made through the WhatsApp application associated with **subject cellular telephone**.

4

Based on my training and experience, I know that drug traffickers often use applications and alternative sources of communication like "WhatsApp" in order to thwart law enforcement and make it harder for law enforcement to detect their communications regarding illegal activity.

The messages between CS and VASQUEZ-VARGAS on June 9, 2018 were transcribed from Spanish to English by DEA contract linguists. As interpreted, on June 9, 2018, CS sent an outgoing text message to VASQUEZ-VARGAS. The text asked "How much you are selling me half for crazy?" VASQUEZ-VARGAS replied, "Look, how Chilango used to put it?" CS replied, "The whole is eight and the half four."

Based on training and experience and debriefings with CS, investigators believe that VASQUEZ-VARGAS and CS were discussing the pricing for half of an ounce to an ounce of cocaine. Investigators believe that when VASQUEZ-VARGAS asked CS "how chilango used to put it," he was referring to prior transactions during which CS conducted controlled purchases of cocaine from TORRES-RAMIREZ. Investigators believe that when CS replied "The whole is 8 and the half four," that CS was referring to an ounce of cocaine for $800 and a half ounce of cocaine for $400.

On November 13, 2017, the Honorable Shirley P. Mensah, United States Magistrate Judge, Eastern District of Missouri authorized a tracking warrant on a 2012 GMC Terrain, bearing Missouri license plate number SR9-A2C, a vehicle driven by TORRES-RAMIREZ. (Cause No. 4:17MJ07266 SPM)

Based upon that federally authorized GPS affixed to that vehicle, investigators were able observed said vehicle make two separate trips to the Odessa, Texas area and then return to St. Louis, MO. Investigators believe that the DTO is obtaining large amounts of cocaine and

marijuana from Odessa and transporting them to St. Louis, MO for distribution. Based on debriefings with the CS, investigators believe that VASQUEZ-VARGAS is in charge of coordinating these trips to Texas during TORRES-RAMIREZ absence.

Investigators plan to use CS to contact VASQUEZ-VARGAS to set up a controlled purchase of cocaine during the week of June 18, 2018. CS will contact VASQUEZ-VARGAS utilizing the "WhatsApp" application that associates **subject cellular telephone** with VASQUEZ-VARGAS. With the precision location information on **subject cellular telephone**, investigators will be able to determine if the **subject cellular telephone** is located at the meet location for the controlled purchase with CS, confirming that subject cellular telephone is being used to utilize the "WhatsApp" that VASQUEZ-VARGAS is using in violation of subject offenses. If **subject cellular telephone** is not located at the meet location, investigators will know that VASQUEZ-VARGAS may be using **subject cellular telephone** as a cover to hide his real cellular number to further avoid detection of law enforcement of his drug distribution activities.

Based upon my training and experience, I am aware that persons engaged in the illegal distribution of narcotics use cellular telephones in furtherance of their drug trafficking operations. Based upon the totality of this investigation, it is my opinion that there is probable cause to believe that the **subject cellular telephone** is being used by an individual who is conspiring to commit, and is committing illegal narcotics distribution and may be planning to commit an additional crime. The precision location information being sought, relative to the **subject cellular telephone,** will further the investigation of the drug trafficking activities and possible crimes against persons committed by VASQUEZ-VARGAS, who investigators believe is using the **subject cellular**

6

**telephone**, including but not limited to assisting in surveillance, determining the location of stash houses, and discerning other patterns of illegal drug trafficking activity.

The investigation has clearly demonstrated that the **subject cellular telephone** is being used in connection with the commission of offenses involving ongoing violations of Title 21, United States Code, Sections 846 and 841(a)(1) (the subject offenses). It is critical that the investigative team be able to locate and monitor the movements of the **subject cellular telephone** thereby assisting in the identification of the co-conspirators and the seizure of narcotics. Your affiant believes that the requested authorization would be a valuable asset in achieving the overall goals of the investigation.

## Investigative Considerations and Techniques

Based on my knowledge, training, and experience, as well as information provided by investigators with specialized experience relating to cellular telephone technology, I am aware of the following facts and considerations:

A. Wireless phone providers typically generate and retain certain transactional information about the use of each telephone call, voicemail, and text message on their system. Such information can include log files and messaging logs showing all activity on a particular account, such as local and long distance telephone connection records, records of session times and durations, lists of all incoming and outgoing telephone numbers or other addressing information associated with particular telephone calls, voicemail messages, and text or multimedia messages.

B. Wireless phone providers also typically generate and retain information about the location in which a particular communication was transmitted or received. For example, when a

cellular device is used to make or receive a call, text message or other communication, the wireless phone provider will typically generate and maintain a record of which cell tower(s) was/were used to process that contact. Wireless providers maintain information, including the corresponding cell towers (i.e., tower covering specific geographic areas), sectors (i.e., faces of the towers), and other signaling data as part of their regularly conducted business activities. Typically, wireless providers maintain records of the cell tower information associated with the beginning and end of a call.

C. Because cellular devices generally attempt to communicate with the closest cell tower available, cell site location information from a wireless phone provider allows investigators to identify an approximate geographic location from which a communication with a particular cellular device originated or was received.

D. Wireless providers may also retain text messaging logs that include specific information about text and multimedia messages sent or received from the account, such as the dates and times of the messages. A provider may also retain information about which cellular handset or device was associated with the account when the messages were sent or received. The provider could have this information because each cellular device has one or more unique identifiers embedded inside it. Depending upon the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Station Equipment Identity ("IMEI"). When a cellular device connects to a cellular antenna or tower, it reveals its embedded unique

identifiers to the cellular antenna or tower in order to obtain service, and the cellular antenna or tower records those identifiers.

E. Wireless providers also maintain business records and subscriber information for particular accounts. This information could include the subscriber's full name and address, the address to which any equipment was shipped, the date on which the account was opened, the length of service, the types of service utilized, the ESN or other unique identifier for the cellular device associated with the account, the subscriber's Social Security Number and date of birth, all telephone numbers and other identifiers associated with the account, and a description of the services available to the account subscriber. In addition, wireless providers typically generate and retain billing records for each account, which may show all billable calls (including outgoing digits dialed). The providers may also have payment information for the account, including the dates and times of payments and the means and source of payment (including any credit card or bank account number).

F. Providers of cellular telephone service also typically have technical capabilities that allow them to collect and generate more precise location information than that provided by cell site location records. This information is sometimes referred to as E-911 phase II data, GPS data or latitude-longitude data. In the Eastern District of Missouri, such information is often referred to as "precision location information" or "PLI" data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by attempting to triangulate the device's signal using data from several of the provider's cell towers. Depending on the capabilities of the particular phone and provider, E-911 data can sometimes provide precise information related to the location of a cellular device.

In order to locate the **subject cellular telephone** and monitor the movements of the phone, the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, may need to employ one or more techniques described in this affidavit and in the application of the government. The investigative agency(ies), and other authorized federal/state/local law enforcement agencies, may seek a warrant to compel the Service Provider, any telecommunication service providers reflected in Attachment 1, to include providers of any type of wire and/or electronic communications (herein incorporated by reference), and any other applicable service providers, to provide precision location information, including Global Position System information (if available), transactional records, including cell site location information, and pen register and trap-and-trace data.

None of the investigative techniques that may be employed as a result of the present application and affidavit require a physical intrusion into a private space or a physical trespass. Electronic surveillance techniques such as pen register and cell site location monitoring typically have not been limited to daytime use only. Furthermore, the criminal conduct being investigated is not limited to the daytime. Therefore, the fact that the present application requests a warrant based on probable cause should not limit the use of the requested investigative techniques to daytime use only. Accordingly, the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, request the ability to employ these investigative techniques at any time, day or night.

The monitoring of the location of the **subject cellular telephone** by one of the methods described herein will begin within ten (10) days of the date of issuance of the requested Warrant and Order.

### Conclusion

Based on the above information, there is probable cause to believe that the **subject cellular telephone** is being used to promote and facilitate a conspiracy to distribute narcotics and the requested authorization would provide relevant evidence of the conspiracy. There is likewise probable cause to conclude that locating and monitoring the movements of the **subject cellular telephone** will lead to the relevant evidence concerning violations of Title 21, United States Code, Sections 846 and 841(a)(1).

6-13-2018
DATE

MICHAEL CARNUCCI
Special Agent
Drug Enforcement Administration

Sworn to and subscribed before me this __13th__ day of June, 2018.

SHIRLEY P. MENSAH
UNITED STATES MAGISTRATE JUDGE
Eastern District of Missouri

11

## LIST OF TELECOMMUNICATION SERVICE PROVIDERS

### SPRINT
### and

| | | | |
|---|---|---|---|
| 01 Communications | Empire Paging | MCI Worldcom | Smart Beep Paging |
| Access Line Communication | Ernest Communications | Metro PCS | Smart City Telecom |
| ACN Communications | Echelon Telecommunications | Metro Teleconnect | Socket Telecom |
| ACS | EZ Talk Communications | Mid-Atlantic | South Central Bell |
| Aero Communications, Inc. (IL) | FDN Communications | Midvale Telephone Exchange | Sprint |
| Afford A Phone | Fibernit Comm | Midwest Wireless | Sprint Spectrum, L.P. |
| Airvoice Wireless | Florida Cell Service | Millington Telephone | SRT Wireless |
| Alaska Communications | Florida Digital Network | MLM Telecommunications | Star Telephone Company |
| Alhambra-Grantfx Telephone | Focal Communications | Mobile Communications | Start Wireless |
| AmeriTel | Frontier Communications | Mound Bayou Telephone Co. | Sugar Land Telephone |
| AOL Corp. | Gabriel Comm | Mountain Bell | Sure West Telephone Company |
| Arch Communication | Galaxy Paging | Mpower Communictions | Talk America |
| AT&T | Global Communications | Navigator | Tele Touch Comm |
| AT&T Mobility | Global Crossing | Telecommunications | Telecorp Comm |
| Bell Aliant | Global Eyes Communications | NE Nebraska Telephone | Telepak |
| Big River Telephone | Global Naps | Netlink Comm | Telistire |
| Birch Telecom | Global Rock Network | Network Services | Telnet Worldwide |
| Blackberry Corporation | Grafton Telephone Company | Neustar | Tex-Link Comm |
| Brivia Communications | Grand River | Neutral Tandem | Time Warner Cable |
| Broadview Networks | Grande Comm | Nex-Tech/United Wireless | T-Mobile |
| Broadvox Ltd. | Great Plains Telephone | Nexus Communications | Total Call International |
| Budget Prepay | Harrington Telephone | NII Comm | Tracfone Wireless |
| Bulls Eye Telecom | Harrisonville Telephone Co. | North Central Telephone | Trinity International |
| Cable Vision | Heartland Communications | North State Comm | Triton PCS Company |
| Call Wave | Hickory Telephone | Northcoast Communications | U-Mobile |
| Cbeyond Inc. | Houston Cellular Telephone | Novacom | Unicel Cellular |
| CCPR Services | Huxley Communications | Ntera | United On-Line |
| Cellco Partnership, | iBasis | N-Teleos Wireless | United States Cellular Corp. |
|   d/b/a Verizon Wireless | IDT Corporation | NTS Communications | United Telephone of MO |
| Cellular One | Illinois Consolidated | Oklahoma City SMSA | US Cellular |
| Cellular South |    Communications | ONSTAR | US Communications |
| Centennial Wireless | Illinois Valley Cellular | Optel Texas Telecom | US LEC |
| CenturyLink | Insight Phone | Orion Electronics | US Link |
| Champaign Cellular | Integra | PacBell | US West Communcations |
| Charter Communications | Iowa Wireless | PacWest Telecom | USA Mobility |
| Chickasaw Telephone | IQ Telecom | PAETEC Communications | VarTec Telecommunications |
| Choctaw Telephone Company | J2 Global Communications | Page Plus Communications | Verisign |
| Choice Net Comm. | Leap Wireless International | Page Mart, Inc. | Verizon Telephone Company |
| Cimco Comm | Level 3 Communications | Page Net Paging | Verizon Wireless |
| Cincinnati Bell | Level One | Panhandle Telephone | Viaero Wireless |
| Cinergy Communications | Local Links Communications | Peerless Network | Virgin Mobile |
| Citizens Utilities | Locus Communications | Pineland Telephone | Vonage Holdings |
| Clear World Communication | Logix Communications | PhoneTech | Wabash Telephone |
| Com-Cast Cable Comm. | Longlines Wireless | PhoneTel | Weblink Wireless |
| Comm South Companies | Los Angeles Cellular | Preferred Telephone | Western Wireless |
| Commercial Communications | Madison River | Priority Communications | Westlink Communications |
| Consolidated Communications |    Communications | Puretalk | Windstream Communications |
| Conversent Communications | Madison/Macoupin Telephone | RCN Telecom | WinStar Communications |
| Cox Communications |    Company | RNK Telecom | Wirefly |
| Cricket Wireless | Mankato Citizens Telephone | QWEST Communications | WISPNET, LLC |
| Custer Telephone Cooperative | Map Mobile Comm | Sage Telecom | World Comm |
| DBS Communications | Marathon Comm | SE All-Tel Comm | XO Communications |
| Delta Communications | Mark Twain Rural | Seren Innovations | Xspedius |
| Detroit Cellular | Matrix Telecom, Inc. | Sigecom LLC | Yakdin Valley Telephone |
| Dobson Cellular | Max-Tel Communications | Sky Tel Paging | YMAX Communications |
| Egyptian Telephone | McCleod USA | | Ztel Communications |
| Electric Lightwave, Inc. | | | |

**ATTACHMENT 1, TO INCLUDE PROVIDERS OF ANY TYPE OF WIRE AND/OR ELECTRONIC COMMUNICATIONS**

Last Update: 11/14/2017